COLIZOLI, APPELLEE AND CROSS-APPELLANT, *v.* COLIZOLI, APPELLANT
AND CROSS-APPELLEE.

[Cite as Colizoli *v.* Colizoli (1984), 15 Ohio St. 3d 333.]

(No. 83-1906—Decided December 31, 1984.)

334

*Messrs. Berkman, Gordon, Murray & Palda, Mr. Larry S. Gordon, Zashin, Rich & Sutula Co., L.P.A.,* and *Mr. Robert I. Zashin,* for appellee and cross-appellant.

*Mr. Alan G. Sandler, Messrs. Miller & Tolaro, Mr. Charles R. Miller* and *Mr. Jeffrey H. Spiegler,* for appellant and cross-appellee.

*Per Curiam.* With respect to the first issue presented, the cross-appellant husband argues that the agreed upon alimony and child support payments ordered by the original divorce decree are not solely for the wife's sustenance, but were intended by the court to include a division of the marital property of the parties. Since the payments constitute a division of the marital property payable in installments, the cross-appellant husband contends that such payments are not subject to modification by the court as a jurisdictional matter under *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399 [75 O.O.2d 474].

While we agree with the husband that when an alimony award is in reality a division of the marital assets and liabilities, such an award is not modifiable under *Wolfe,* we do not believe that the facts and circumstances of the instant payment scheme indicate a division of the marital property that is now being paid in installments. We find that the court of appeals correctly identified the three factors involved in the original divorce decree which militate against a determination that the installment payments constituted a division of the marital property. These factors are as follows: first, an unidentified portion of the payments are expressly designated as child support; second, no other provision for spousal support

was made·in the decree; and third, the total amount of marital assets was determined to be $7,090, while the total amount of the installment payments exceeds $160,000. Thus, the installment payments could not logically be considered a division of marital property. Therefore, we affirm the appellate court's holding that the installment payments provided in the original divorce decree constitute sustenance alimony and child support, and not a division of marital property.

Given our determination concerning the characterization of the installment payments, our inquiry now turns to the question as to whether the alimony and support payments are subject to modification by the original decreeing court under the *Wolfe* decision. In the instant case, the payments agreed upon and decreed by the court in the original divorce proceeding were not subdivided so as to indicate how much of each payment constitutes sustenance alimony, or how much constitutes child support. Apparently, the parties agreed to keep the amounts unidentified in order to take advantage of the federal income tax loophole sanctioned in *Commissioner* v. *Lester* (1961), 366 U.S. 299.[1]

With respect to modification of child support, it is clear that R.C. 3109.05[2] permits the court to modify a child support order based on the

---

[1] Under this decision, where a court orders a combined award of alimony and child support, and the amount constituting child support is indeterminable, the entire amount of the award is taxable to the recipient spouse and deductible by the paying spouse.

[2] R.C. 3109.05, provides as follows:

"(A) In a divorce, dissolution of marriage, alimony, or child support proceeding, the court may order either or both parents to support or help support their children, without regard to marital misconduct. In determining the amount reasonable or necessary for child support, including the medical needs of the child, the court shall consider all relevant factors including:

"(1) The financial resources of the child;

"(2) The financial resources and needs of the custodial parent and of the noncustodial parent, when there is only one custodian;

"(3) The standard of living the child would have enjoyed had the marriage continued;

"(4) The physical and emotional condition of the child, and his educational needs;

"(5) The financial resources and needs of both parents, when there are joint custodians;

"(6) The educational needs of the child and the educational opportunities that would have been available to him had the circumstances requiring a court order for support not arisen.

"The court shall include in the support order the requirement that one of the parents subscribe to a hospital service plan on behalf of the child.

"(B) The court may make any just and reasonable order or decree permitting any parent who is deprived of the care, custody, and control of the children to visit them at the time and under the conditions that the court directs. The court may, upon notice and hearing, make any modification that it determines just in an order of support of a child or an award of alimony upon proof that the party subject to the order has been continuously or repeatedly prevented from exercising a right to visit the child established by an order of court. In the discretion of the court, reasonable companionship or visitation rights may be granted to any other person having an interest in the welfare of the child. The juvenile court shall have exclusive jurisdiction to enter the orders in any case certified to it from another court."

factors enumerated therein. See, also, *Peters* v. *Peters* (1968), 14 Ohio St. 2d 268 [43 O.O.2d 441]. The policy reasons behind the statutory allowance for modification of child support are manifest. As the court of appeals aptly noted, "[p]arental relationships and obligations continue after the parents divorce each other. The children are not thereby divorced from either parent. They have a right to expect the same support and care they would have reasonably expected if their parents had remained married."

A different question however, is posed with respect to a modification of the sustenance alimony in the case *sub judice*. On cross-appeal, the cross-appellant husband contends that where the maximum amount of agreed alimony ordered to be paid to a spouse for sustenance over a specified term of years is ascertainable, the court which entered such order is without jurisdiction to modify the order, absent an express reservation of jurisdiction to modify. The cross-appellee wife counters that the adoption of such a distinction by this court would effectively overrule the second paragraph of the syllabus in *Wolfe, supra*.

In *Wolfe*, this court stated, at page 419:

"* * * where an alimony award is for support only, *is for an indefinite amount*, and where there is no property settlement, or if there is such a settlement, the support award is independent thereof, the jurisdiction of the court to modify will be implied in the decree irrespective that such support order is based upon an agreement of the parties." (Emphasis added.)

We find the circumstances in the instant case are distinguishable from *Wolfe*, because here we have an alimony support order for a *definite* amount over a specified number of years.

In *Wolfe*, the alimony support order was terminable only upon the death or remarriage of the spouse who was receiving such payments, and was therefore, indefinite. In the case at bar, the wife can continue receiving such payments, albeit reduced by $6,000 per year, regardless of whether she dies or remarries. We believe that where the parties agree to and the court decrees, a sustenance alimony award for an ascertainable amount over an ascertainable term of years, such an award should not be subject to modification absent an express reservation of jurisdiction to do so by the decreeing court. Therefore, in reversing the appellate court on this point we find merit in the husband's cross-appeal contention, and hold that the trial court was without jurisdiction to modify that unidentified portion of the installment payments which constitutes sustenance alimony.

Our decision in this respect should in no way be interpreted as a retreat from our holding in *Wolfe, supra*, or our decision in *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217. Those decisions continue to be determinative of a court's ability to modify alimony where the amount and/or duration of the alimony award is indefinite. However, where a decree incorporates an agreement of the parties which specifically delineates the amount and duration of sustenance alimony, we find that such a decree should be accorded its proper degree of finality.

Given our disposition of the issues heretofore examined, we find the remaining issues and arguments raised by both parties to be moot. On remand, the trial court is directed to limit its modification, if any, to that portion of the installment payments which represents child support, within the parameters set forth in R.C. 3109.05.

Accordingly, we affirm in part and reverse in part the judgment of the court of appeals, and remand the cause to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part,
reversed in part and
cause remanded.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.

LOCHER, J., concurs in part and dissents in part.

LOCHER, J., concurring in part and dissenting in part. Since I believe that a domestic relations court has an implied reservation of jurisdiction to modify inequitable and/or unconscionable sustenance awards in a divorce decree, I must dissent with regard to the second issue. Justice is not served by the inflexible analysis of the majority. I do, however, concur with the resolution of the first issue.

The majority relies heavily on paragraph two of the syllabus in *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399 [75 O.O.2d 474], in distinguishing *Wolfe* from the instant case. In my opinion, *Wolfe* is not distinguishable, and applies to permit a modification herein. Prior to reciting paragraph two of the syllabus in the opinion, the *Wolfe* court states at 418-419:

"It is self-evident that a separation agreement, which purports to set a fair level of alimony for sustenance, as well as divide and distribute the property of the parties and settle their affairs, *is not necessarily continually fair and equitable thereafter.* We may assume that it is fair at the moment of its execution, and that it continues to be fair at the time of divorce if the parties offer it for inclusion and merger into the decree. At that point, all that can be said is that it sets a fair and equitable 'initial level' of obligations.

"Such initially fair agreements may be rendered manifestly oppressive in countless situations, such as where the * * * *economic situation of either* or both *of the parties drastically changes.* The holding of this case, that a court has continuing modification jurisdiction over alimony for sustenance awards, is to assure that such awards are continually just." (Emphasis added.)

Unquestionably, this implied reservation of jurisdiction is found only

for "indefinite" sustenance awards. In *Wolfe,* the $35,000 per year award was found to be "indefinite" for the following reason:

"Further, we view the alimony award as indefinite, even though provision is made for termination upon appellee's remarriage or her death. The occurence [*sic*] of those two conditions subsequent is necessarily indefinite." *Id.* at 419.

In the instant case, there are similar conditions subsequent. Thus, this award is indefinite as well.

In *Gross* v. *Gross* (1984), 11 Ohio St. 3d 99, antenuptial agreements were validated by this court as not contrary to public policy. The *Gross* holding is instructive for the instant case since in both cases the court is faced with a divorce situation in which freedom of contract is pitted against the equitable interest in protecting the disadvantaged spouse. In paragraph four of the syllabus in *Gross,* the court held:

"In a judicial review of such an agreement, upon motion for modification, at any subsequent separation or divorce proceeding of the parties, provisions setting forth maintenance or sustenance alimony must meet the additional test of conscionability at the time of the divorce or separation."

Thus, sustenance alimony terms of antenuptial agreements must pass the test of conscionability, to be measured at a time *following* the agreement, *i.e.,* the time of divorce or separation. Similarly, in this case we should invoke the test of conscionability, to be measured at a time following the divorce decree, for the reasons expressed above in *Wolfe, supra.*

This court sits as a court of equity as well as a court of law. To condone the type of activities engaged in by appellee and others similarly situated is to ignore this court's equitable powers to do justice. Moreover, the trial court is the proper forum to weigh the equities involved, and appellate review should be restricted to the determination of whether an abuse of discretion has occurred. *Cherry* v. *Cherry* (1981), 66 Ohio St. 2d 348 [20 O.O.3d 318]. I am of the firm opinion that the trial court was well within the bounds of its discretion in modifying the alimony payments to better reflect the economic equities present.

Accordingly, I dissent with regard to the second issue.